MAKAR, J.,
concurring in part, dissenting in part.
Millions of dollars are at stake in this complicated divorce case, one involving a large IBM computer distribution company, Mainline Information Systems, Inc., whose valuation is in dispute. The former husband and wife purchased the company in 1989, shortly after they were married, and built it into a highly successful international enterprise.
While I concur in Judge Benton’s opinion generally, I write separately to express disagreement with the astonishing conclusion reached at trial that Mainline — a company with over a half billion in annual sales, over 600 employees, numerous high level managers, and over 800 professional certifications among its workers — has not a thimbleful of “institutional goodwill”[14] to its name; instead, to the extent Mainline has goodwill, it has been deemed entirely “personal” to the former husband, and thereby not distributable to the former wife as a co-owner.[15]
This conclusion is contrary to the record, which shows that — at the very least— Mainline acquired $3 million in distributable goodwill from its purchase of Cornerstone, a company independent of, but very similar in structure to, Mainline with sales of $40-45 million, annual profits of $5.5 million, and ninety employees.[16] It is also based on the speculative assumption that Mainline could not be sold in the marketplace absent a non-compete signed by the *393 former husband (who refuses to do so),[17] which resulted in the trial court accepting the lowest estimated value of Mainline possible (i.e., the net value of the liquidation of its tangible assets), one that was at the bottom of Mainline’s historical valuation line and even below Mainline’s basis for tax purposes. Just two years later Mainline was worth $109.8 million.
But Mainline is wholly dependent on IBM — not the former husband. IBM controls every significant aspect of the relationship; indeed, the trial court found that IBM had “virtual absolute control” of Mainline. Its “control is so great that it can control the deals Mainline gets or doesn’t get, its profit margins and its sales requirements.” The relationship is much like a franchise-franchisee relationship, with the former husband in the role of a successful — but completely-controlled — franchisee. It is wholly speculative that Mainline, with all its institutional infrastructure and managerial talent, simply could not be sold in the marketplace without a non-compete from the husband; IBM’s absolute control over Mainline dictates to the contrary. In sum, the conclusion that Mainline’s operations have generated only personal goodwill owned exclusively by the former husband is erroneous warranting a modification to the amount to which the former wife is entitled or a retrial on this aspect of damages.

. Goodwill "is property which attaches to and is dependent upon an existing business entity.” Thompson v. Thompson, 576 So.2d 267, 269 (Fla.1991). In a professional setting, goodwill is the "value of the practice which exceeds its tangible assets and which is the tendency of clients/patients to return to and recommend the practice irrespective of the reputation of the individual practitioner.” Id. There are two types of goodwill: enterprise (or institutional) and personal. Enterprise goodwill "exists separate and apart from the reputation or continued presence” of a particular individual. Id. at 270.

. Part of the problem is that Mainline’s valuation was done with the rudimentary analytical guidelines from the seminal professional services case, Thompson, which dealt with valuing a former husband’s law firm in which he was the sole shareholder. No reported appellate cases have applied Thompson outside of that type of professional association context; or to a massive international corporate enterprise like Mainline. While Thompson may be workable for small or moderately-sized professional associations, it is a poor fit for valuing the goodwill of a complex and uniquely structured international corporation that is itself controlled by one of the largest corporations in United States history.

.Mainline’s CFO testified that Cornerstone, like Mainline, was an IBM business partner in the west coast region; it was purchased for about $4 million with $3 million allocated to goodwill, and $949,000 for its tangible assets.

. The former husband devotes approximately 20 hours a week to Mainline matters; the remainder is spent on community, economic development, and real estate activities. All managers at Mainline, other than the former husband, have non-compete agreements.